The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Young. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modifications in adding a new Finding of Fact Number Thirteen and an additional sentence in Conclusion of Law Number One.
***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer at all relevant times herein.
3. The carrier on the risk was Lumbermen's Mutual Casualty Insurance Company at all relevant times herein.
4. The parties stipulated that plaintiff's date of injury was December 28, 1995.
5. The parties stipulated that plaintiff's average weekly wage was $310.50, yielding a compensation rate of $207.00.
6. The parties stipulated to the plaintiff's medical records from Bull City Rehabilitation, Durham Clinic, Durham Medical Center, Durham Regional Hospital, Hand and Orthopaedic Therapy, North Carolina Spine Center, Park Medical Center, Raleigh Neurosurgery, Southwind Spine and medical records from Dr. George Edwards, Sr.
7. The issues presented are:
 a) Whether plaintiff is disabled as a result of her injury by accident of December 28, 1995?
 b) Whether plaintiff is entitled to any benefits under the North Carolina Workers' Compensation Act?
***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff-employee was 35 years old with a GED and a data entry certification. Plaintiff-employee's prior work history includes work as a waitress, a billing manager and as a day care worker.
2. Plaintiff-employee was hired by the defendant-employer in October of 1992 as a customer service representative.
3. Defendant-employer was scheduled to close its office on December 29, 1995 and lay off all of its employees. On December 28, 1995, however, the defendant-employer offered its employees three work options: 1) go home without pay; 2) help with the packing; or 3) go online. On December 28, 1995, plaintiff-employee chose to help with packing and as she pushed a cart loaded with telephone books, she felt a sharp pain in her back. Plaintiff-employee's back pain worsened throughout the day, but plaintiff-employee completed her work shift and went home.
4. Plaintiff-employee was unable to sleep on the night of December 28, 1995 due to back pain. On December 29, 1995, plaintiff-employee's last day of work with defendant-employer, plaintiff-employee reported her injury to her supervisor, Barry Marlowe. Mr. Marlowe urged plaintiff-employee to seek medical attention, but plaintiff-employee declined because she thought the pain would subside.
5. At the hearing before the Deputy Commissioner, plaintiff-employee testified that she had planned to return to school as soon as she was laid off by defendant-employer and that between December 29, 1995 and March of 1996, she had in fact contacted North Carolina Central University about returning to school.
6. On January 2, 1996, plaintiff-employee presented to her family doctor, Dr. Freeman, complaining of back pain and difficulty sleeping due to the back pain. Dr. Freeman diagnosed plaintiff-employee with muscle strain, prescribed medication and recommended physical therapy.
7. Defendant-employer referred plaintiff-employee to Dr. Ronald L. Plemmons. Plaintiff-employee presented to Dr. Plemmons on March 5, 1996, again complaining of back pain. Dr. Plemmons diagnosed plaintiff-employee with thoracic strain and recommended physical therapy. Plaintiff-employee followed up with a visit to Dr. Christian L. Lambertsen, Dr. Plemmons' partner, who concurred with diagnosis of thoracic strain and opined that plaintiff-employee's injury was minimal. Neither Dr. Plemmons nor Dr. Lambertsen assigned any restrictions to plaintiff-employee and neither doctor took the plaintiff-employee out of work. Dr. Plemmons determined that plaintiff-employee was at maximum medical improvement on April 11, 1996.
8. On June 18, 1996, however, plaintiff-employee returned to Dr. Lambertsen seeking a second opinion. Dr. Lambertsen also determined that plaintiff-employee was at maximum medical improvement, but recommended that plaintiff-employee see a physiatrist to evaluate whether or not there was any non-work related cause of plaintiff-employee's symptoms.
9. Pursuant to Dr. Lambertsen's recommendation, defendant-employer referred the plaintiff-employee to Dr. Brett C. Hynninen, a physical medicine and rehabilitation specialist. Plaintiff-employee reported to Dr. Hynninen that her current activities included housework, working in a tanning salon, driving her children around and working on the family computer at home, but no physical therapy as had been previously recommended. Dr. Hynninen diagnosed plaintiff-employee with myofascial pain related to the plaintiff-employee's December 28, 1995 injury by accident. Dr. Hynninen again recommended physical therapy, that plaintiff-employee gradually return to work and avoid repetitive use of her arms overhead. Dr. Hynninen further opined that plaintiff-employee's muscle injury was not permanent and therefore ordered no permanent restrictions.
10. On October 23, 1996, defendant-employer referred plaintiff-employee to Dr. George S. Edwards, Sr., an orthopaedic surgeon, for an independent medical evaluation. After examining plaintiff-employee, Dr. Edwards opined that he could not identify any objective findings upon which to base a permanent partial impairment rating or work restrictions. Dr. Edwards did recommend a Functional Capacity Evaluation, which indicated that plaintiff-employee could return to work in a medium duty category which exceeded the plaintiff-employee's essential task functions as a customer service representative with defendant-employer. On December 2, 1996, Dr. Edwards determined that plaintiff-employee had reached maximum medical improvement and he assigned no permanent impairment to the plaintiff-employee.
11. On March 24, 1997, plaintiff-employee presented to Dr. Paul B. Suh, an orthopaedic surgeon. Dr. Suh diagnosed plaintiff-employee with early cervical degenerative disk disease and possible thoracic degenerative disk disease. Dr. Suh opined that plaintiff-employee's pushing of the cart filled with telephone books on December 28, 1995 contributed to the development of plaintiff-employee's early cervical degenerative disk disease and possible thoracic degenerative disk disease. Dr. Suh recommended physical therapy and opined that plaintiff-employee's condition is permanent and that there is nothing further he can do for the plaintiff-employee. Dr. Suh further opined that plaintiff-employee reached maximum medical improvement on July 10, 1997 and he assigned plaintiff-employee a 5% permanent partial impairment rating to plaintiff-employee's back and restricted her to limited bending and twisting and no standing, walking or sitting for more than one hour at a time.
12. Notwithstanding Dr. Suh's opinion regarding plaintiff-employee's condition, four other physicians, Drs. Plemmons, Lambertsen, Hynninen and Edwards, opined that plaintiff-employee's muscle injury is not permanent and plaintiff-employee can return to work without any temporary or permanent restrictions or impairment rating. Moreover, Dr. Suh determined that there is nothing else he can do for plaintiff-employee. Consistent with the testimony of Drs. Plemmons, Lambertsen, Hynninen and Edwards, the Full Commission finds plaintiff reached maximum medical improvement on December 2, 1996 at which time she was not under any work restrictions and did not sustain any permanent partial disability.
13. At the hearing before the Deputy Commissioner, the only evidence plaintiff-employee presented regarding her efforts to seek employment was that between March of 1996 and June of 1996, she "went to different places to apply for jobs, but that the employers were not hiring." Plaintiff-employee did testify that in July and August of 1996, she worked for a friend in the friend's tanning salon. Plaintiff-employee worked about two hours per day and only reported when "she felt like it." Plaintiff-employee received free tans as compensation. Plaintiff-employee had also reported this job to Dr. Hynninen. However, contrary to plaintiff-employee's initial report of her activities to Dr. Hynninen, plaintiff-employee testified at the hearing that she could not perform housework or drive due to back pain. She further testified that she did not believe she could handle any job.
14. The competent evidence in the record fails to establish that plaintiff-employee's inability to earn wages is due to her injury by accident of December 28, 1995. The competent evidence establishes that plaintiff-employee's inability to earn wages is due to plaintiff-employee's failure to seek other employment.
***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer and as a direct result of a specific traumatic incident of the work assigned on December 28, 1995. Since plaintiff did not sustain any permanent partial disability as a consequence of this accident, she is not entitled to any permanent partial disability compensation. N.C. Gen. Stat. § 97-2(6); § 97-31(23).
2. Plaintiff has failed to prove that her inability to earn wages after December 28, 1995 was related to her injury by accident of December 28, 1995, therefore, she is not entitled to compensation. Plaintiff's inability to earn wages after her injury by accident of December 28, 1995 was due to her failure to seek other employment.
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiff's claim for disability compensation is, and under the law, must be DENIED.
2. Each side shall pay its own costs, except that the defendants shall pay the expert witness fees of Dr. Paul B. Suh in the amount of $235.00.
This the ___ day of June 1999.
 S/_____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
DCS/bjp